[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs have appealed from an assessment of damages in the amount of $47,100 made by the defendant for the taking a portion of their property and certain easements and rights connection with the layout, alteration, extension widening change of grade and improvement of the state highway known as Route 74. The property taken is on the easterly side of present Sullivan Avenue, Route 194, in the Town of South Windsor and it is particularly described as are the easements and rights CT Page 10017 taken, in the plaintiffs' complaint. The area taken consists of 1.11 acres, more or less, and it is shown, together with the easements and rights taken on a map entitled "Town of South Windsor Map Showing Land Easement Acquired From Norman E. Hills Et Al by the State of Connecticut Conn. Rte. 74 Scale 1"=40' November 1989 Robert W. Gubala Transportation Chief Engineer — Bureau of Highways."
The subject property before the take contained 20.975 acres of land situated on the easterly side of Sullivan Avenue in South Windsor. It has about 877 feet of split frontage on Sullivan Avenue. The land rises gradually easterly of Sullivan Avenue for about 200 feet, after which it slopes up sharply to a level area. To the east of the level area is a ravine through which flows Plum Gully Brook. The land slopes up sharply again to the east of the brook. The brook is in a Flood Hazard Zone, and the surrounding the brook is in a designated inland wetlands area. Sullivan Avenue is relatively heavily travelled and the subject property is on the edge of the central business district, directly northerly of the town hall complex and within a reasonable distance of all amenities. To the east of the subject property there are condominiums and land to the north has been rezoned to permit cluster development with single family houses. The subject property is zoned Rural Residential which has a minimum 40,000 square foot lot requirement. It has a well and septic tank but the dwelling which was formerly on the property had been removed before the take so that it is unimproved land. The property is subject to a 300 foot wide easement in favor of Connecticut Light and Power Company which bisects the property. Apparently all utilities are available. There are old gravel in recent years, but no special permit which is required by the zoning regulations for removal of gravel has been issued.
It was stipulated by the parties that the date of the partial taking was November 5, 1990, and that the sum of $47,100 was deposited by the defendant with the clerk of the Superior Court and withdrawn by the plaintiffs.
The property taken consists of 1.11 acres, more or less, which is taken from the southerly portion of the subject property in order to relocate Route 74 across the subject property so that it will no longer terminate at the existing "five corners" intersection about one-quarter of a mile to the south. The portion of the property taken is a strip 60 feet wide except where it meets Sullivan Avenue. The take broadens in that area and, together with the nonaccess line deprives the plaintiffs of the use of 175 feet of frontage on Sullivan Avenue. The new highway will necessities cut slopes of up to 30 feet, more or less, below grade. The highway will cross Plum CT Page 10018 Gully Brook and fills of up to 10 feet, more or less will be required in this area. The defendant also acquired easement to slope north and south of the new highway. There remains a small parcel of 0.609 of an acre, more or less, to the south of the take. The defendant acquired easements to slope for the support of the highway over this parcel within an area of 0.009 of an acre more or less, and to slope for the safety of the highway and to remove, use or retain excavated material within an area of 0.455 of an acre, more or less. It also acquired a drainage right of way easement within an area of 0.006 of an acre of this parcel at the brook crossing. To the north of the take, the defendant acquired similar easements. It acquired easements to slope for the support of the highway within an area of 0.024 of an acre, more or less, and to slope for the safety of the highway and to remove, use or retain excavated material within an area of 0.475 of an acre more or less. It also acquired a drainage right of way easement to the north of the new highway at the brook crossing within an area of 0.046 of an acre, more or less. The defendant will provide a ready graded area for a future driveway to and from the new highway. The defendant terminated the plaintiffs' right of access to Sullivan Avenue from 175 feet of the southwesterly portion of their property bordering on Sullivan Avenue where the new highway will intersect with Sullivan Avenue. It also terminated the plaintiffs' right of access to the westerly portion of the new highway extending easterly for about 170 feet along the plaintiffs' southerly property line. The defendant also acquired a temporary easement for the purpose of access for construction equipment, to grade, seed and otherwise restore any areas disturbed within an area of 0.507 of an acre of the plaintiffs' property.
Peter R. Marsele, an appraiser retained by the plaintiffs, testified as an expert witness. Marsele opined that the highest and best use to which the subject property can be put is to excavate gravel and to develop the property with single family dwellings. He used the market approach to value and found three sales which he considered comparable. Using these sales and adjusting them for differing factors, he opined that the fair market value of the subject property before the take was $25,000 per acre, and that the before the take value of 20.975 acres was $524,000. The cuts for the new highway will leave steep embankments on the subject property on each side of the road. Marsele was of the opinion that the land within the slope area would be unbuildable. He opined that the portion of the plaintiffs' property to the south of the new highway would have no value to the plaintiffs and that the property within the slope area to the north would have nominal value. He opined that the reduction in what he called the width of the subject property caused by the take considering also the existing CT Page 10019 300 foot right of way, so narrowed the property as to make development difficult. Although he conceded that there would be no impact on the portion of the property north of the right of way, it was his opinion that the take resulted in 20% severance damage to the remaining property. He opined that the value of the property after the take was $381,000. He thus estimated that the damage was $143,000.
Eric Chiappaoni, a qualified appraiser, testified for the defendant as an expert witness. He also used the comparable sales method of evaluation and he considered the same three sales as Marsele had considered. It was his opinion that the highest and best use for the subject property was for single family or condominium development. He opined that the subject property before the take had a fair market value of $21,500 per acre and that the value of the 20.975 acres was $451,000. It was his opinion that the loss of access to Sullivan Avenue from 175 feet of the southwesterly portion of the subject property was more than balanced by the frontage to be acquired on the new highway. He opined that the steep slopes resulting from the construction would not prevent access, although he acknowledged that only one driveway will be constructed and that a curb cut permit would be required to gain access at any other place on the highway. It was his opinion that there was no severance damage to the property to the north of the new highway, and that the only severance damage was to the parcel remaining to the south of the new highway. He considered that the 0.609 of an acre parcel remaining after the take was an uneconomic remnant of only nominal value to the plaintiffs, and that its highest and best use is for possible buffer purposes or possible assemblage to parcels to the south. He considered the fair market value of the subject property after the take to be $405,000. He estimated that the defendant would complete its work in one year and that a fair return on the value of the land acquired under its temporary work easement would be 10% which he calculated to be $1,100. He thus estimated damages at $46,000, including severance damages to the se southerly portion of plaintiffs' property, to which he added $1,100 to arrive at total damages of $47,100.
The highest and best use of the subject property is for single family dwellings. The newly located Route 74 will provide greater road frontage than that which existed before the take, although the steep embankments and necessity for curb cut permits will limit access beyond the driveway to be constructed by the defendant. Title to the small parcel to the south of the new highway remains in the plaintiffs at their request according to Chiapponi. This parcel has only nominal value to the plaintiffs because it has very limited use. I do not find that the property to the north of the new highway has been reduced in CT Page 10020 value by the take and I find no severance damages to that portion of the property.
After having seen the property, and having given due consideration to the testimony of the witnesses and all of the evidence, and relying upon my own knowledge of the elements establishing value, I have concluded that the damages sustained by the plaintiffs are $57,000. Judgment may enter for the plaintiffs for the further sum of $9,900 in addition to the sum of $47,100 which was deposited with the clerk of the superior court and withdrawn by the plaintiffs, with interest on such further sum $9,900 from the date of taking to the date of payment, together with an allowance of $800 towards their appraisal fees.
George D. Stoughton State Trial Referee